(No. 26307.— )

JOHN RUDIN, Appellee, *vs.* THE CITY OF HARVEY *et al.* Appellants.

*Opinion filed Sept. 17, 1941—Rehearing denied November 18, 1941.*

JOHN J. DOWDLE, (WILLARD C. WALTERS, and ALBERT O. HOFFMAN, of counsel,) for appellants.

WALTER W. DUFT, for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Prior to the sale herein referred to, the Public Service Company of Northern Illinois owned and operated a water-works system in the city of Harvey. An ordinance of the city, No. 852, approved August 4, 1924, provided for the purchase of the entire system and the payment of the purchase price $200,000 by the issuance of interest-bearing certificates of indebtedness. The ordinance provided that

all the earnings should go into a water fund and the certificates and interest were payable exclusively from such fund. They were to mature serially from September 15, 1925, to September 15, 1944, and were secured by a mortgage upon the system.

In September, 1926, ordinance No. 954 was enacted, approving plans and specifications for the construction of what the ordinance termed to be an extension to the former system, the same to be known as waterworks system No. 2. Another ordinance, No. 976, was enacted January 31, 1927, authorizing the issuance of interest-bearing certificates of indebtedness in the amount of $350,000, the cost of system No. 2. The earnings of this system were to go into fund No. 2 and the certificates and interest were payable from it. They matured serially from February 1, 1932, to February 1, 1956, and were secured by mortgage on the extension system.

The ordinances provided a means for ascertaining the earnings of the respective systems and directed an allocation. This was apportioned upon the water supplied by each system as determined by the intake meters at the points where each of said systems received the supply of water from the city of Chicago. At the time of the enactment of the ordinances in reference to the construction of system No. 2 there were outstanding certificates for system No. 1 to the amount of $190,000. This had been reduced to $129,000 when this suit was started in April, 1941.

Plaintiff John Rudin, the owner of certain certificates issued for system No. 2, instituted this *mandamus* suit in the superior court of Cook county against the city and its commissioners to compel the payment of the matured interest on his certificates. The principal of the certificates was not due at the time of the beginning of his suit. The defense interposed was that the ordinances which provided for the construction and payment of system No. 2 were

void. The trial court overruled such contentions and entered a judgment awarding the writ, commanding the payment of $1320, the amount stipulated to be due as interest upon plaintiff's certificates. The defendants appealed directly to this court on the trial judge's certification that the validity of an ordinance was involved and the public interest required a direct appeal.

The ordinance enacted for the acquisition of system No. 1 and those enacted for the construction of system No. 2 were pursuant to an act in force July 1, 1899, entitled "An act authorizing cities, towns and villages to build, purchase or extend waterworks systems for public and domestic use and to provide for the cost thereof." (Laws of 1899, p. 104.) The title of the act and some of its sections have been materially changed. (Ill. Rev. Stat. 1939, chap. 24, pars. 440-446.) It is not necessary, however, to consider the changes made by the amendments as the inquiry must be directed to the provisions of the act as of the time of the enactment of the ordinances.

Appellants contend that the act limited the power of the city to the acquisition of one waterworks system and having purchased a system in 1924, payment of which was authorized by the issuance of certificates under ordinance No. 852, it thereby expended all the power given by statute and the construction of system No. 2 and the enactment of ordinances No. 954 and No. 976 were without legislative authority and therefore void.

Section 1 of the act provided, that every city, incorporated town and village in this State is hereby authorized to acquire waterworks for supplying water for public use and for domestic use of its inhabitants by building or purchasing a waterworks system or enlarging or extending an existing system. In payment for such building, purchase or enlargement any such municipality may issue certificates of indebtedness limited in their payment solely to the water funds hereinafter provided for, such certificates to bear

interest. Section 2 provided that any such municipality desiring to avail itself of the provisions of the act should first pass an ordinance fixing in a general way the capacity of the waterworks system it was proposed to acquire and referring to the plans and specifications therefor, which ordinance should fix the rates at which water was to be supplied for all private purposes and said rates when so fixed could not thereafter be reduced until the certificates issued for acquiring or enlarging the waterworks and the interest on the certificates were fully paid.

Section 3 was that whenever any municipality should avail itself of the provisions of the act "the entire proceeds arising from the operation of the waterworks system thereof shall be paid into a fund known as the 'water fund' and which fund shall be and remain inviolate until the certificates issued under the terms hereof and the interest thereon is fully paid, and the treasurer of such municipality shall not pay any warrants drawn on said fund unless the same be drawn in payment of the necessary operating expenses of such waterworks system, or in payment of the certificates issued hereunder or the interest thereon..

Section 4 authorized the execution of a mortgage or deed of trust by the municipality upon its waterworks system to secure the payments of the certificates and section 5 authorized foreclosure under certain conditions in event there was default in payment of the certificates of interest. Section 6 referred to the rights of the purchaser at the foreclosure sale and section 7 directed a construction of the act as conferring powers in addition to those already existing.

Appellants do not claim the act does not authorize an extension or enlargement of a water system, but they rest their claim upon the basis that system No. 2 was separate and distinct from system No. 1. If, as a fact, system No. 2 was but an enlargement or extension of system No. 1, then appellants' theory fails.

The property acquired by the city in the purchase of system No. 1 is set forth in ordinance No. 854. The streets and alleys where the water mains are located are given in detail. Reference is made to a pumping plant and the equipment used therewith and the real estate upon which it is located. There was also included a large main which extended from the system in the city of Harvey to a point on Halsted street in Chicago where the main was connected with a main owned by the city of Chicago.

The ordinance for system No. 2 provided for the construction of a meter vault and the installation of two meters at a point on Halsted street, presumably at the point where the main for system No. 1 connected with the main of the city of Chicago, the laying of more than 16,000 feet of main extending from the meter vault along certain streets in Harvey to a concrete reservoir of 3,000,000 gallon capacity. The construction of the reservoir was included as a part of the improvement. The ordinance recites that the city, acting through its public officials, had decided "to cause to be constructed and acquired for and by the city of Harvey an extension of its existing water distribution system." A comparison of the location and character of the systems provided for in each of the ordinances shows that system No. 2 was but an enlargement and extension of the former system and that the city authorities so understood it.

From the words used in the title and those employed in the first section, it is obvious the legislative objective was to grant cities, incorporated towns and villages such power as might be necessary to enable them to acquire and operate such a waterworks system as would furnish an adequate supply of water to its inhabitants for both public and domestic use. There is nothing in the act that indicates any intent to restrict the municipalities in the exercise of such power as might be reasonably necessary to meet the general object and purpose of the act.

There is a rule of construction that where the general purpose and object of a legislatve act is apparent, then the several provisions of the act shall be construed together in the light of such general. purpose and object so that effect may be given to the main intent and purpose of the legislature as therein expressed. *Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528; *Burns* v. *Industrial Com.* 356 id. 602; *People* v. *Illinois Merchants Trust Co.* 328 id. 223.

The act authorized the city to build, purchase or extend its waterworks system and was particularly exacting in requiring the application of the earnings from such system to the payment of the certificates issued to meet the costs of such project. The fact that the law required an allocation of the earnings as between the systems to the end that the certificates of indebtedness might be paid therefrom does not mean that the act should be construed that such enlargement or extension would be considered as a separate and distinct system, wholly unconnected with the one already existing. The requirement for allocation of funds arises from the method by which payment was to be made and does not operate to restrict the power granted to the city to enlarge or extend the system which was inadequate to meet the purposes for which it was acquired. The earnings of each system, except as to the operating costs, were to be kept inviolate and could not be used for the payment of certificates issued in acquiring another system, but this requirement does not convert what was an enlargement of a present system into a system separate and distinct from the main system.

Appellants refer to the provisions of the statute where the words "fund" and "water fund" are used and argue that since the words are in singular form, but one fund was contemplated. But one fund for each system or each issue of certificates was required and to give effect to the legislative intent the words "fund" or "water fund" should be

construed as referring to the fund created to pay the certificates issued in the construction or acquiring of a particular system.

In a case against present appellants and where they challenged the validity of this ordinance on the same grounds urged here, the Circuit Court of Appeals held the ordinances valid. *Getz* v. *City of Harvey*, 118 Fed. (2) 817, 826.

Appellants refer to the provision in ordinance No. 852 which provided that the entire proceeds arising from the operation of system No. 1 should go into a fund for the payment of certificates issued in payment of said system and the provision in ordinance No. 954 which provided that the total receipts from its present system (system No. 1) and system No. 2 should be allocated to water fund No. 1 and water fund No. 2, and argues that an allocation of the proceeds of the two systems to the two funds would result in an impairment of the contractual obligations of the city in reference to the certificates for system No. 1 and, as such, would violate section 14 of article 2 of the State constitution.

In presenting this point appellants do not take into consideration all of the provisions of ordinance No. 954, which relates to the allocation of the entire proceeds to the two funds. After directing the allocation of the total receipts of the two systems to the two funds, the basis upon which division shall be made is set forth. It provides that it shall be in the proportion of the water supplied by each of said systems respectively as determined by the intake meters at the points where each of said systems receives its supply of water from the city of Chicago. Such method of dividing the proceeds between the two funds would, if followed, result in preserving to those holding certificates issued in payment of system No. 1 all the income of that system. The contract obligation of the city in reference to such certificates would not be impaired if the method of alloca-

tion as provided in ordinance No. 954 was faithfully followed by the city officials.

If, after the adoption of the ordinances, the city did not follow the method provided by the ordinance but has adopted another which results in the impairment of the fund which should be kept inviolate for the certificates issued under system No. 1, then such misconduct on the part of the city officials would not be available to the city as a defense in this suit. The allegation in appellee's petition is that there are sufficient funds on hand in the water fund of the city to pay all of the outstanding past due interest coupons of the certificates issued pursuant to the ordinances authorizing system No. 2, and appellants' answer admits such allegation to be true. There was no error in awarding the writ of *mandamus*.

For the reasons assigned, the judgment is affirmed.

*Judgment affirmed.*